UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x
LAVON GITTENS, *individually and on
behalf of all others similarly situated,*

                 Plaintiff,

       - against -                                1:13-cv-04649-ER

RM HQ, LLC, *doing business as "Chevy's
Fresh Mex,"*

                 Defendant.
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

i

# TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND. ........................................................ 2

      I.      The Court's Preliminary Approval Order, Notice and Claim Administration ....... 2

      II.     Results of Notice ....................................................................................... 2

      III.    Contributions of Named Plaintiffs ........................................................ 3

SETTLEMENT TERMS ................................................................................................... 4

ARGUMENT ..................................................................................................................... 4

      I.      Final Approval of the Settlement Is Appropriate .................................... 4

      II.     The Settlement is Fair, Reasonable, and Adequate ................................ 7

            A.     Litigation Through Trial Will Be Complex, Costly, and Long
                 (*Grinnell* Factor 1) …................................................................... 7

            B.     The Reaction of the Class Has Been Positive
                 (*Grinnell* Factor 2) ..................................................................... 8

            C.     Discovery Has Advanced Far Enough to Allow The Parties To Resolve
                 The Case Responsibly (*Grinnell* Factor 3) ................................. 9

            D.     Plaintiffs Would Face Real Risks If the Case Proceeded
                 (*Grinnell* Factors 4 and 5) ........................................................... 9

            E.     Establishing A Class and Maintaining It Through Trial Would Not Be
                 Simple (*Grinnell* Factor 6) ....................................................... 10

            F.     Defendant's Ability to Withstand A Greater Judgment Is Not At Issue
                 (*Grinnell* Factor 7) ................................................................... 11

             G.     The Settlement Fund Is Substantial, Even In Light of the Best Possible
                 Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)
                 ……………………………………………………………….......... 11

      IV.    A Service Award is Appropriate in this Case...................................... 12

IV.   Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Fund ............................................................................................................... 15

     A.   The Terms in the Named Plaintiff's Retainer, the Settlement Agreement, and the Class Settlement Notices Entitle Class Counsel to a fee of One-third of the Settlement Fund .................................................................. 15

     B.   The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate in Common Fund Cases ....................................................... 16

     C.   An Award of One-Third of the Settlement Fund as Attorneys' Fees is Reasonable ............................................................................................... 17

          i.   Class Counsel has expended significant time and labor on this case …………………………………………………….............. 18

          ii.   The large and complex nature of this litigation warrant the award of the attorneys' fees being requested ........................................... 18

          iii.   Class Counsel took on a large amount of risk in prosecuting this case .............................................................................................. 19

          iv.   Class Counsel's representation has been of the highest quality …………………………………………………….................... 20

          v.   The requested fees are reasonable in relation to the settlement …………………………………………………….................... 21

          vi.   Public policy weighs in favor of awarding attorneys' fees ……………………………………………….............................. 22

     D.   The Lodestar "Cross check" Further Supports an Award to Class Counsel of One-Third of the Settlement Fund ....................................................... 22

     E.   Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs ................................................................................................... 24

CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adeva v. Intertek USA Inc., et al.*,
   No. 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) .................... 21

*Beckman v. KeyBank, N.A.*,
   85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013) ....................................................................... 19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 478 (1980) ................................................................................................ 16

*Bredbenner v. Liberty Travel, Inc.*,
   CIV.A. 09-905 MF, 2011 WL 1344745, at *24 (D.N.J. Apr. 8, 2011) .......................... 14

*Churchill Village, LLC v. Gen. Elec. Co.*,
   361 F.3d 566, 575 (9th Cir. 2004) .................................................................................... 5

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448, 463 (2d Cir. 1974) ............................................................................ *passim*

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198,
   *8 (S.D. N.Y. May 11, 2010) .......................................................................................... 21

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................................... 7

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326, 338–39 (1980) .......................................................................................... 22

*DeMunecas v. Bold Food, LLC*,
   No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D. N.Y. Aug. 23, 2010) .............. 21

*Denney v. Deutsche Bank AG*,
   443 F.3d 253, 268 (2d Cir. 2006) ................................................................................... 23

*Febus v. Guardian First Funding Grp., LLC*,
   870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ............................................................... 18, 19

*Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*,
   No. 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) ................... 21

iv

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................ *passim*

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    09 Civ. 486 (ETB), 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) ................................... 24

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147, 157 n.13 (1982) ................................................................................. 23

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43, 47 (2d Cir. 2000) ............................................................................. *passim*

*Green v. Wolf Corp.*,
    406 F.2d 291, 301 (2d Cir. 1968) ................................................................................. 24

*Guzman v. Joesons Auto Parts*,
    CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) ........................ 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1027 (9th Cir. 1988) ............................................................................. 5

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ............................................................. 7, 9, 11

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694, 700 (E.D. Mo. 2002) .............................................................................. 6

*In re Boesky Sec. Litig.*,
    888 F. Supp. 551, 562 (S.D.N.Y. 1995) ....................................................................... 23

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320, 326 (E.D.N.Y. 1993) ...................................................................... 17

*In re Ira Haupt & Co.*,
    304 F. Supp. 917, 934 (S.D.N.Y. 1969) ...................................................................... 10

*In re Janney Montgomery Scott LLC Financial Consultant Litigation*,
    No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) .................................... 14

*In re Lloyd's Am. Trust Fund Litig.*,
    96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002) ............. 17, 23

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57, 60 (S.D.N.Y. 1993) ............................................................................. 23

*In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS

12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) ..................................................... 23

*In re Top Tankers, Inc. Sec. Litig.,*
  06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) ....................... 6

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.,*
  724 F. Supp. 160, 163 (S.D.N.Y. 1989) ......................................................... 17

*In re Visa Check/MasterMoney Antitrust Litig,*
  280 F.3d 124, 139 (2d Cir. 2001) ................................................................ 20

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516, 535 (3d Cir. 2004) ............................................................. 5, 9

*Jemine v. Dennis,*
  901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ..................................................... 19

*Khait v. Whirlpool Corp.,*
  No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) ......................... 14

*Kidrick v. ABC Television Appliance Rental,*
  No. 97-69, 1999 WL 1027050, *4 (N.D. W.Va. May 12, 1999) ................................... 21

*Kirsch v. Fleet Street, Ltd.,*
  148 F.3d 149, 172 (2d Cir.1998) ................................................................. 17

*Kuzma v. Internal Revenue Service,*
  821 F.2d 930, 933-34 (2d Cir.1987) ............................................................ 24

*LeBlanc-Sternberg v. Fletcher,*
  143 F.3d 748, 763 (2d Cir. 1998) ............................................................... 24

*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350, 1354 (11th Cir. 1982) ............................................................ 5

*Marcus v. Kan. Dep't of Revenue,*
  209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ...................................................... 5

*Maywalt v. Parker & Parsley Petroleum Co.,*
  67 F.3d 1072, 1079 (2d Cir. 1998) .............................................................. 5

*Massiah v. MetroPlus Health Plan, Inc.,*
  No. 11 Civ. 5669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012).......... *passim*

*McBean v. City of New York,*
  228 F.R.D. 487, 502 (S.D.N.Y. 2005) ........................................................... 20

vi

*Mills v. Electric Auto–Lite Co.*,
   396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970) ............................................... 17

*Murillo v. Pacific Gas & Elec. Co.*,
   No. 2:08-1974 WBS GGH, 2010 WL 2889728, *12 (E.D. Cal. July 21, 2010) ............ 14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140, 1148 (8th Cir. 1999) ................................................................................. 5

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) ............................ 23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26, 31 (E.D.N.Y. 2006) ................................................................................. 16

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ................................................................... 14

*Robidoux v. Celani*,
   987 F.2d 931, 936-37 (2d Cir. 1993) ............................................................................... 23

*Romero v. HB. Auto Grp., Inc.*,
   No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, 2012 WL 1514810
   (S.D.N.Y. May 1, 2012) .................................................................................................. 20

*Rotuna v. West Customer Mgmt. Group, LLC*,
   4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) ........................... 21

*Savoie v. Merchants Bank*,
   166 F.3d 456, 460 (2d Cir. 1999) ...................................................................... 16, 23, 24

*Sewell v. Bovis Lend Lease, Inc.*,
   09 Civ. 6548 RLE, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) ......... 13, 24

*Shayler v. Midtown Investigations. Ltd.*,
   No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540, 2013 WL 772818
   (S.D.N.Y. Feb. 27, 2013) ................................................................................................ 19

*Torres v. Gristede's Operating Corp.*,
   04-CV-3316 PAC, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) ....................... 14

*Toure v. Amerigroup Corp.*,
   10 CIV. 5391(RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .............................. 21

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ................ 13

*Trawinski v. KPMG LLP*,
      No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366, 2012 WL 6758059, at *6
      (S.D.N.Y. Dec. 21, 2012) ................................................................. 19

*Visa Check III*,
      297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) .................................... 17

*Vizcaino v. Microsoft Corp.*,
      290 F.3d 1043, 1052-54 (9th Cir. 2002) ........................................ 23

*Wal-Mart Stores, Inc. v. Dukes*,
      131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
      396 F.3d 96 (2d Cir. 2005) ............................................... 4, 5, 23

*White v. Western Beef Props., Inc.*,
      No. 07 Civ. 2354, 2011 U.S. Dist. LEXIS 141696, 2011 WL 6140512
      (E.D.N.Y. Dec. 9, 2011) ................................................................ 20

*Willix v. Healthfirst, Inc.*,
      No 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) ..................... *passim*

*Wineland v. Casey's Gen. Stores, Inc.*,
      267 F.R.D. 669, 678 (S.D. Iowa 2009) ........................................... 14

*Wright v. Stern*,
      553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) ..................................... 8

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure Rule 23 .......................................... *passim*

## SECONDARY SOURCES

Herbert B. Newberg & Alba Conte,
      *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002) ....................... 4

## PRELIMINARY STATEMENT

Subject to final Court approval, the parties have settled the claims of Plaintiffs and the putative class against Defendant RM HQ, LLC for $195,000.00. The proposed settlement resolves all claims in the lawsuit alleging that Defendant failed to pay tipped and hourly non-tipped employees minimum wage and overtime compensation for all hours worked, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). On March 30, 2015, the Court preliminarily approved the Parties' proposed settlement and authorized the issuance of Notice to Class Members. (*See* Doc. 40).

By this motion, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Nicholas Conlon in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Conlon Decl.")[1] (Doc. 44); (2) approve the service payments to the Named Plaintiffs as discussed in Argument Section III *infra*; (iii) approve an award of attorneys' fees in the amount of $65,000.00 (33.33% of the Gross Settlement Fund); (iv) approve reimbursement of Class Counsel's litigation expenses in the amount of $4,199.15; and (v) enter judgment dismissing the federal action with prejudice in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Court's Preliminary Approval Order, Notice, and Claim Administration

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Doc. 40), and is not repeated here.

On March 30, 2015, the Court preliminarily approved the Parties' proposed settlement. (*See* Doc. 40). The Court also approved the Notice of Proposed Settlement of Class Action

---

[1] Unless otherwise indicated, all exhibits are attached to the Conlon Decl.

1

Lawsuit and Fairness Hearing, ("Notice") and authorized the mailing of the Notice to the Class Members. (*See id*.)

## II.     Results of Notice

On April 3, 2015, the third-party Claims Administrator appointed by counsel (the Angeion Group) updated the Notice with the appropriate date for the Final Approval Hearing and the deadlines for objections and opt-outs. (Declaration of Nicholas Conlon ("Conlon Decl.") ¶ 5). The Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. (*See* Conlon Decl. Ex. A.)

On April 3, 2015, Counsel for Defendant provided Class Counsel and the Claims Administrator with a mailing list containing the name, last known address, position held, and dates of employment during the Class Period for the Class Members. (Devery Decl. ¶ 4.) The Class List contained information for two hundred ninety (290) Class Members. (*Id.*) On April 17, 2015, the Notices were mailed via First Class Mail to the Class Members. (*Id*. at ¶ 6.)

If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, the Claims Administrator performed an address search ("skip trace") on all of these addresses by using Experian's nationwide address database. (*Id*. at ¶ 8.) Ultimately, thirty-six (36) Notices were undeliverable because Class Counsel was unable to locate a current address. (*Id*.)

Thirty-one (31) individuals returned Claim Forms. (Conlon Decl. ¶ 6.) None of the Class Members submitted a Request for Exclusion and no Class Member objected to the Settlement. (*Id*. at ¶¶ 4, 5.)

III.     **Contributions of the Named Plaintiff**

The Named Plaintiff was integral in initiating this class action and made significant contributions to the prosecution of the litigation. (Conlon Decl. ¶ 7.) The Named Plaintiff served the class by providing detailed factual information regarding his job duties and hours worked and the job duties and hours worked of the class members, assisting with the preparation of the complaint, helping to prepare and execute declarations, producing documents in support of their claims, relaying information to Class Members during the pendency of this case and assuming the burden associated with assisting with litigation. (*Id*. at ¶ 9.) The Named Plaintiff also assisted Class Counsel by preparing for the full-day mediation, which culminated in this settlement. (*Id*. at ¶ 10.) Although depositions were not conducted, the Named Plaintiff was ready to sit for a deposition and to provide information to support his anticipated Rule 23 class action and summary judgment motions. In addition, the Named Plaintiff assumed other professional risks and burdens, including risking his professional reputation and potential workplace retaliation from future employers by agreeing to be the Named Plaintiff. (*Id*. at ¶ 11.) Service Awards of this type are commonly awarded in complex wage and hour litigation.[2]

## SETTLEMENT TERMS

The terms of the Settlement Agreement, which were preliminarily approved by the Court March 30, 2015 (*see* Doc. 40), and have not changed since that date, are summarized in Plaintiffs' Motion for Preliminary Approval of Class Settlement (Doc. 35), and are not repeated here.

## ARGUMENT

---

[2] *See, e.g., Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.) ("Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.")

## I.       Final Approval of the Settlement Agreement is Appropriate

Because this is a class action, and because it involves FLSA claims, the Court must approve the settlement. The procedure for approval includes three distinct steps:

1.      Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2.      Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. The Court has already preliminarily approved the proposed settlement (Doc. 35) and notice of settlement has already been disseminated to all affected class members (*see* Factual and Procedural Background Section II *supra*).

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v.Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004). In

4

exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Under Fed. R. Civ. P. 23(e), to grant final approval of a settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable, and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 Civ. 8141 (DAB), 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655 at *2, *citing In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In

evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Massiah*, 2012 WL 5874655 at *2 (citations omitted).

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Plaintiffs Memorandum of Law in Support of Plaintiffs Motion for Preliminary Approval of Class Settlement. (Doc. 36). It is clear from the facts of this case that the parties reached this settlement only after exchanging essential wage and hour and company policy information, which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including a full-day mediation session under the direction of experienced class action mediator, Ralph S. Berger, Esq.. (*See* Doc. 36). In other words, the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful informal discovery.

## II.        The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 587655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

### A.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell Factor 1*)

By reaching a favorable settlement before Rule 23 class certification, dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174(S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with nearly three hundred (300) Class Members. (Devery Decl. ¶ 4)

Although the parties have already undertaken considerable time and expense in litigating this matter (Conlon Decl. ¶¶ 13, 14), further litigation without settlement would necessarily result in additional expense and delay. Extensive additional discovery would be required to establish liability and damages. A complicated trial would be necessary, featuring lengthy testimony by Defendant, Plaintiffs, and numerous class members, in addition to possible expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any

7

judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manger. Therefore, the first Grinnell factor weighs in favor of preliminary approval.

**B.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

As previously stated, the response to the notices has been overwhelmingly positive. Thirty-one (31) individuals have returned Claim Forms. (Conlon Decl. ¶ 6)  No class members have opted out of the settlement. (*Id.* at ¶ 4) Class Counsel received telephone calls from numerous Class Members and answered their questions about their claims and concerns about retaliation. No Class Members have presented objections to the settlement. (Conlon Decl. ¶ 5) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class members submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

**C.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)**

Although preparing this case through trial would require thousands more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

8

The parties' discovery here meets this standard. Class Counsel interviewed several current and former employees of Defendant to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed hundreds of pages of hard-copy documents from Plaintiffs and other current and former employees including, but not limited to, time and payroll records, human resources documents, and other company compensation policy documents. (*Id*.)

### D.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and NYLL, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages.

To prove liability, Plaintiffs would have to defeat Defendant's arguments that the Plaintiffs were not required to work off the clock, and that Defendant did not include any tip-ineligible employees in its tipped employees' tip pool. Furthermore, Plaintiffs would have to prove that these claims are appropriate for class certification under Rule 23, which Defendant would strongly oppose. Even if such a class was certified, Plaintiffs would have to establish that the class and collective actions should remain certified for trial.

While Plaintiffs believe that they could ultimately establish Defendant's liability on these claims, to do so would require significant factual development. While the Named Plaintiff believes that his claims are meritorious, his counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process

9

are inherently uncertain in terms of outcome and duration. *See Massiah*, 2012 WL 5874655, at *4 ("Litigation inherently involves risks.") The proposed settlement alleviates this uncertainty. This factor weighs heavily in favor of preliminary approval. *See In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

###### E.   Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. The Court has not yet certified the Rule 23 state law class, and the parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing by both parties. In arguing against class certification, Defendant would likely argue that the number and variety of individualized questions, the different job duties between tipped and non-tipped employees, the number of hours worked, and other similar questions preclude class certification. If Plaintiffs ultimately prevail in obtaining Rule 23 class certification, Defendant would likely move to seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f).

Risk, expense, and delay are involved in each of these steps in the litigation. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

###### F.   Defendant's Ability to Withstand a Greater Judgment is Not at Issue (*Grinnell* Factor 7)

Defendant's ability to withstand a greater judgment is not currently at issue. Even if the Defendant can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this Court from granting preliminary approval.

G.   **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendant has agreed to settle this case for a substantial amount, $195,000. (*See* Ex. A at ¶ 1.17). The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor." *Massiah*, 2012 WL 5874655, at *5.

Here, each Class Member will receive payment based upon his or her relevant weeks of employment with Defendant. (*See* Ex. A at ¶ 3.4(A)). As explained in detail above, the amount that each class member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. In the event that a substantial number of objectors come forward with meritorious

objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant its final approval.

## III.        Service Awards Are Appropriate in This Case

The Named Plaintiff also seeks a service award for his work and willingness to represent the class. No Class Member has objected to the Service Awards. (Conlon Decl. ¶ 4) Service Awards are consistent with payments made to named plaintiffs and discovery representatives in this Circuit, other jurisdictions, and in other wage and hour cases. The service award is intended to compensate the Named Plaintiff for his willingness to serve the Class, the services he rendered, risks he bore, and opportunities sacrificed to ensure a favorable class settlement. Thus, the Court should find that the Service Award is reasonable.

In light of the Named Plaintiff's efforts resulting in a substantial settlement on behalf of the settlement class, the Named Plaintiff is entitled to a Service Award, to be distributed from the Settlement Fund. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 WL 5874655, at *8, *citing Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 RLE, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Willix*, 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres v. Gristede's Operating Corp.*, 04-CV-

12

3316 PAC, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

The incentive payments are also within the range granted in other wage-and-hour cases throughout the country. *See*, e.g., *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case); *Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, *12 (E.D. Cal. July 21, 2010) ($10,000 enhancement payment for class action under California law and the FLSA); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 678 (S.D. Iowa 2009) ($10,000 incentive award to named plaintiffs for class action under FLSA and various state wage and hour laws); *Bredbenner v. Liberty Travel, Inc.*, CIV.A. 09-905 MF, 2011 WL 1344745, at *24 (D.N.J. Apr. 8, 2011) ($10,000 service payment to named plaintiffs for class action under FLSA and various state wage and hour laws).

13

Here, the Named Plaintiff performed substantial services and bore substantial risks for the class. His services began with bringing the case that was eventually resolved in the settlement for more than 250 current and former employees of Defendant. (Conlon Decl. ¶ 8) The Named Plaintiff represented the class by participating in the drafting of the complaint, providing numerous documents, working with Class Counsel in investigating the class allegations, participating in the settlement negotiations including a full-day mediation, and ultimately concluding a successful settlement for the class. The Named Plaintiff also assumed substantial professional risks and burdens in bringing the litigation. (*Id*. at ¶ 11). Thus, a Service Award to the Named Plaintiff is appropriate.

**IV.    Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Fund**

Class Counsel respectfully moves the Court for an award of attorneys' fees and reimbursement of expenses in the amount of one-third (33.33%) of the Settlement Fund, or $65,000. A summary of Class Counsel's fees are attached as Exhibit B to the Conlon Declaration. During the past two years of litigation and settlement negotiations, Class Counsel's efforts have been without compensation (*id*. at ¶ 20), and their entitlement to be paid has been wholly contingent upon achieving a good result.

**A.    The Terms in the Named Plaintiff's Retainer, the Settlement Agreement, and the Class Settlement Notices Entitle Class Counsel to One-Third of the Settlement Fund**

The Named Plaintiff agreed to Class Counsel's fee of up to one-third of the common fund plus reimbursement for costs. (Conlon Decl. ¶ 21) The Named Plaintiff specifically agreed in his individually negotiated retainer agreement that Class Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus reimbursement of

litigation and costs. (*Id.*) The Court preliminarily approved the Settlement Agreement in this case

that was agreed to by the Named Plaintiff on behalf of the class and the Defendant. (*See* Doc. 40)

Moreover, the Settlement Agreement provides that "Class Counsel will petition the Court

for an award of attorneys' fees not to exceed 33 1/3% of the Gross Settlement Amount.

Defendant will not oppose this application, including any appeal or request for reconsideration if

the application is denied or modified by the Court." Finally, the Court-approved Notices that

were mailed to all Class Members stated the following:

> "Class Counsel will ask the Court to approve payment of up to
> $65,000 (33 1/3% of the settlement fund established by Defendant)
> to them for attorneys'' fees, plus costs to be paid from the
> settlement fund."

(Doc. 45-1 (Notice).) In accordance with the numerous agreed upon provisions, an award of

$65,000 in attorneys' fees and costs, which is one-third of the Settlement Fund after subtracting

litigation costs, is appropriate.

    **B.**    **The Percentage of the Fund Method of Awarding Attorneys' Fees Is
Appropriate in Common Fund Cases**

In common fund situations, the attorneys whose efforts created the fund are entitled to a

reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,*

209 F.3d 43, 47 (2d Cir. 2000); *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)

(citing cases). The rationale for the doctrine is an equitable one: it prevents unjust enrichment of

those benefitting from a lawsuit without contributing to its cost. *Id. citing Boeing*, 444 U.S. at

478; *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970)).

What constitutes a reasonable fee is properly committed to the sound discretion of the

district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998), and will not be

overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual

finding. *Goldberger*, 209 F.3d at 47. In 1984, in *Blum v. Stenson,* the Supreme Court observed that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n. 16 (1984). The Second Circuit has accordingly recognized that *Blum* indicates that the percentage-of-the-fund method is a viable method for awarding reasonable attorneys' fees. *Goldberger*, 209 F.3d at 49 *citing Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Moreover, the trend in this Circuit is toward the percentage method, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *citing Visa Check III*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Id.*, *citing In re Lloyd's Am. Trust Fund Litig.*, 96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. *Savoie*, 166 F.3d at 460-61, c*iting* Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–59 (1985). It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. *Id.* at 461. For the same reason, the percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet. *Id.* Finally, the lodestar method is time-consuming and burdensome on the courts. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

C.      **An Award of One-Third of the Settlement Fund as Attorneys' Fees is <u>Reasonable</u>**

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50, *citing In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). Here, all of the Goldberger factors weigh in favor of awarding Class Counsel their requested fees.

i.      <u>*Class Counsel has Expended Significant Time and Effort on this Case*</u>

The procedural and factual history of this case up to the Court's Preliminary Approval Order is detailed in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Doc. 36). Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel focused their investigation and legal research on the underlying merits of the Plaintiff's and Class Members' claims, the damages to which they were entitled, and the propriety of class and collective action certification. Class Counsel spoke with potential Class Members to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other relevant information. Class Counsel also obtained and reviewed numerous documents from the Named Plaintiff related to his employment with Defendant, including pay records, time records, employee handbook, and other related documents. (Conlon Decl. at ¶ 13) It is clear from the amount of pre-litigation research and work, and the extensive settlement negotiations, including a full-day mediation, that Plaintiffs' Counsel expended

substantial time and labor on this case over the past two and a half years. Accordingly, this factor weighs in favor of awarding Class Counsel's requested fees.

> ii. *The Large and Complex Nature of this Litigation Warrant the Award of Attorneys' Fees Being Requested*

While hybrid FLSA and state wage-and-hour cases are often large and complex, *see Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("courts have recognized that FLSA cases are complex and that "[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action. . . "), this one was no different, consisting of a nationwide FLSA collective action and NYLL state class action, covering 290 individuals. The size and difficulty of the issue in a case are significant factors to be considered in making a fee award. *Beckman v. KeyBank, N.A.*, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation"). Thus, this factor favors awarding Class Counsel the requested fees.

> iii. *Class Counsel Took on a Large Amount of Risk in Prosecuting this Case*

Class Counsel took on substantial risk in prosecuting this action. As was discussed in Section II.D. *supra*, this case involves complex factual and legal issues as to both liability and damages. The Named Plaintiff and the Class were far from guaranteed to prevail on all of these issues. Further, as Plaintiffs' Counsel prosecuted this case on a contingency basis, advancing both fees and costs, counsel took on the risk that they would not ultimately recover anything for their time and effort. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Febus, LLC*, 870 F. Supp. 2d at 340.

18

Furthermore, in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), Class Counsel faced significant risk associated with class certification under Rule 23 because of the question of whether the Plaintiffs' job duties were sufficiently similar. Since *Wal-Mart*, courts in this District have denied numerous Rule 23 motions in wage and hour cases. *See Shayler v. Midtown Investigations. Ltd.*, No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) (denying motion to certify class of security guards allegedly misclassified as independent contractors); *Trawinski v. KPMG LLP*, No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366, 2012 WL 6758059, at *6 (S.D.N.Y. Dec. 21, 2012) (denying motion to certify class of transaction associates allegedly misclassified as exempt administrators); *Romero v. HB. Auto Grp., Inc.*, No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) (denying motion to certify class of auto dealership employees in misclassification case); *White v. Western Beef Props., Inc.*, No. 07 Civ. 2354, 2011 U.S. Dist. LEXIS 141696, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) (adopting report and recommendation to deny motion to certify class of department managers and assistant department managers allegedly misclassified under executive exemption). Unlike in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54.

Accordingly, the award of fees is appropriate in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *See Willix*, 2011 WL 754862, at *7.

### iv.    *Class Counsel's Representation has been of the Highest Quality*

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v.*

*Joesons Auto Parts*, CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Id.* (citations omitted).

As discussed in Section II, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. Furthermore, although the parties did not have to heavily litigate this action prior to reaching a resolution; Class Counsel has significant experience prosecuting large-scale wage and hour actions including misclassification cases such as this one. Consequently, Class Counsel should be awarded the requested fees.

v.     <u>*The Requested Fees are Reasonable in Relation to the Settlement*</u>

Class Counsel's attorneys' fees request of one-third is consistent with decisions in this Circuit that have awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Toure v. Amerigroup Corp.*, 10 CIV. 5391(RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (33%); *Willix,* 2011 WL 754862, at *6 (33%); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D. N.Y. Aug. 23, 2010) (awarding class counsel one-third of settlement fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D. N.Y. May 11, 2010) (one-third).

Similarly, Class Counsel's attorneys' fees request is consistent with decisions from across the country that have awarded one-third or more in wage-and-hour settlements. *See, e.g., Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding class counsel 1/3 of the settlement fund for

20

Hybrid FLSA and Rule 23 Class Action wage and hour case); *Adeva v. Intertek USA Inc.*, *et al.*, No. 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) (awarding class 34% of the class settlement fund in a wage-and-hour case); *Rotuna v. West Customer Mgmt. Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third); *Kidrick v. ABC Television Appliance Rental*, No. 97-69, 1999 WL 1027050, *4 (N.D. W.Va. May 12, 1999) (one-third).

Class Counsel's requested fees of one-third (33.33%) of the Settlement Fund are therefore "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754865, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action). Accordingly, this factor weighs in favor of approval of the requested fees.

### vi.    *Public Policy Weighs in Favor of Awarding Attorneys' Fees*

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix,* 2011 WL 754862, at *6 (citation omitted). Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.* If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]. *Id.*

Based upon the negotiated fee agreement in this case, the typical percentage of compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class

Counsel is entitled to a reasonable attorneys' fees award of one-third (33.33%) of the Settlement Fund.

### D.     The Lodestar "Cross Check" Further Supports an Award to Class Counsel of One-Third of the Settlement Fund

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See, e.g., Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6). Here, Class Counsel has a

lodestar of $73,010.97, and thus the requested fee award of $65,000 does not depend on a multiplier. (*See* Ex. B (Summary of Attorneys' Time Records).)

In addition to the time already spent in bringing this action, Class Counsel anticipates that it will have to perform work after the final approval hearing, including answering class member questions, answering questions from the Settlement Administrator, and ensuring that the Settlement Fund has been administered and monitored in accordance with the parties' agreement. This additional time also supports Class Counsel's fee request. *See Sewel*, 2012 WL 1320124, at *13.

### E.    Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). *See also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Thus, courts typically allow counsel to recover their out-of-pocket expenses including filing fees, process service fees, court reporter fees, mediation fees, translator fees, postage and photocopies, that are reasonable and were incidental and necessary to the representation of the Class. *Garcia v. Pancho Villa's of Huntington Vill., Inc*., 09 Civ. 486 (ETB), 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012).

Here, Class Counsel expended more than $4,199.15 in litigation costs to bring the case to conclusion. All costs expended are recoverable under the FLSA. The costs are summarized in Exhibit B to the Conlon Declaration.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for Final Approval of Class Settlement and enter the Proposed Order. (Doc. 43-1).


Dated: June 26, 2015                                     RESPECTFULLY SUBMITTED,
Jersey City, New Jersey

                                                         By:  */s/ Jason T. Brown*
                                                         Jason T. Brown
                                                         Jtb@jtblawgroup.com
                                                         Nicholas Conlon
                                                         Nicholasconlon@jtblawgroup.com
                                                         Michael G. Radigan
                                                         radiganlaw@aol.com
                                                         **JTB LAW GROUP, LLC**
                                                         155 2nd Street, Suite 4
                                                         Jersey City, NJ 07302
                                                         Phone: (201)-630-0000
                                                         Fax: (855)-582-5297

                                                         *Attorneys for Plaintiffs*