USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 7|16|2015

$4UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LAVON GITTENS, *individually and on behalf of all others similarly situated,*

                      Plaintiff,

      - against -                                  1:13-cv-04649-ER

RM HQ, LLC, *doing business as "Chevy's Fresh Mex,"*

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval") (Doc. 43).

**I.**   **Background and Procedural History**

    1.    The parties' proposed settlement resolves all claims in the action entitled *Gittens v. RM HQ, LLC.*, Civil Action No. 1:13-cv-04649-ER (the "Litigation"), which is currently pending before this Court.

    2.    The Plaintiffs in this action allege that Defendant failed to pay them and its other tipped and hourly-non-tipped employees minimum wages and overtime compensation for all hours worked each week, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further allege that Defendant failed to pay them and its other tipped and hourly-non-tipped employees spread-of-hours compensation in violation of the NYLL.

1

3. On July 3, 2013 named Plaintiff Lavon Gittens commenced this action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under FLSA.

4. On February 5, 2014, the Court approved a stipulation between the parties which authorized Plaintiff's counsel send collective action notices to putative class members. Between February 28, 2014 and March 24, 2014, twelve (12) additional individuals filed their written consents to become party-plaintiffs in this case.

5. On August 5, 2014, the parties participated in mediation with an experienced, independent mediator Ralph S. Berger, Esq., and agreed on the instant Settlement Agreement.

## II. Overview of Investigation and Discovery

6. Plaintiffs' counsel conducted a vigorous investigation into the potential merits of the action. The inquiry included interviews with potential Class Plaintiffs to determine the hours they worked, an analysis of any paystubs and related records used to calculate compensation, and research into statutory claims and damages to which they were entitled. In addition, Plaintiff's Counsel conducted extensive research into Defendant's business, practices, and policies regarding employee compensation in both the Times Square location and additional locations. Notably, Class Counsel analyzed the arbitration agreement which Defendant had entered into with putative class members, and determined that it was unenforceable. In addition, Class Counsel thoroughly investigated the Defendant's pending bankruptcy and its potential impact on a recovery for the class.

## III. Settlement Negotiations

7. Over the course of approximately thirteen (13) months of litigation, the parties engaged in informal and formal settlement negotiations. The parties conducted numerous settlement discussions both in-person and over the phone, and ultimately agreed to engage in

private mediation to assist the parties with their negotiations. To that end, the parties prepared for and attended a full-day mediation session before Ralph S. Berger, Esq. on August 5, 2013. (*Id.*) After a full day of negotiations facilitated by Mr. Berger, the parties were able to reach an agreement on a settlement amount and several other key terms.

        8. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement and Release ("Settlement Agreement"). At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis.

        9. The Settlement Agreement creates a fund of $195,000.00 to settle the Litigation (the "Settlement Fund" or the "Fund"). The Fund covers class members' settlement awards, service payments, attorneys' fees and costs, and administration fees and costs.

**IV.**    **Preliminary Approval of Settlement and Dissemination of the Notice**

        10. On March 30, 2015, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members (*See* Doc. 40). The Court also approved the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, ("Notice") and authorized the mailing of the Notice to the Class Members. (*See id.*).

        11. On April 17, 2015, the Claims Administrator appointed by counsel (the Angeion Group) sent the Notices by the Class Counsel via First Class Mail to the Class Members. (Devery Decl. ¶¶ 6, 7.) There were 290 Class Members on the list provided to Class Counsel by Defendant. (*Id.* at ¶ 4.) Ultimately, there were thirty-six (36) Notices that were undeliverable because Class Counsel was unable to locate the class members' current mailing address. (*Id.* at ¶ 8.)

12. The Notices advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. (*Id.* at ¶ 6.)

13. Thirty-one (31) individuals returned Claim Forms. (*Id.* at ¶ 11.) None of the Class Members submitted a Request for Exclusion and no Class Member objected to the Settlement. (*Id.* at ¶¶ 9, 10.)

V. **Contribution of the Named Plaintiff**

14. The Named Plaintiff was integral in initiating this class action and made significant contributions to the prosecution of the litigation. (Conlon Decl. ¶ 7.) The Named Plaintiff served the class by providing detailed factual information regarding his job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, helping to prepare and execute declarations, keeping informed and in constant communication with Class Counsel regarding the progress of their action, and assuming the burden associated with being a named plaintiff and assisting with litigation. (*Id.* at ¶ 14.) In addition, the Named Plaintiff attended the full-day mediation on August 5, 2014. (*Id.* at ¶ 15.)

15. Although depositions were not conducted, the Named Plaintiff was ready to sit for a deposition and to provide information to support his anticipated Rule 23 class action motion and summary judgment motion. (*Id.* at ¶ 16.)

16. In addition, the Named Plaintiff assumed other professional risks and burdens.

17. Without the effort of the Named Plaintiff, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved. (*Id.* at ¶ 17.) Service Awards of this type are commonly awarded in complex wage and hour litigation.

## VI. Final Approval of the Class Settlement

18. On June 26, 2015, the Named Plaintiff filed his Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval"). The Court held a fairness hearing on July 16, 2015. Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Conlon Decl. as Exhibit A; (ii) approves the service payment to the Named Plaintiff in the amount of $3,900; and (iii) approves an award of attorneys' fees in the amount of $65,000.00 (33.33% of the Gross Settlement Fund) and reimbursement of litigation expenses in the amount of $4,199.15.

19. Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.) citing *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

20.     If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655, at *2, citing *In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)(same); "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id., citing Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.* (citations omitted).

**A.     Procedural Fairness**

21.     It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including a full-day mediation under the direction of an experienced class action mediator, Ralph S. Berger, Esq. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

**B.     Substantive Fairness**

22.     In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655 at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

23.   Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

24.   The response to the settlement has been positive. All of the Class Members have remained in the settlement (Conlon Decl. ¶ 4) and no Class Member has objected to the settlement terms. (*Id.* at ¶ 5.) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

25.   The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be

sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel interviewed several current and former employees of Defendant to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed hundreds of documents produced by Defendant relating to the employment claims of the Plaintiff; and analyzed time and payroll records from Plaintiff and putative class members. (Conlon Decl. ¶ 13).

26. The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendant's arguments that the Plaintiffs were paid for all hours worked. Defendant would argue that all time worked by Plaintiffs was reported in Defendant's time-keeping system and compensated. In addition, Defendant would argue that its inclusion of banquet coordinators in the employees' tip pool did not invalidate Defendant's tip credit because banquet coordinators do not have sufficient managerial authority to constitute employers, or agents thereof, under the NYLL. Furthermore, Plaintiffs would have to prove that these claims are appropriate for class certification under Rule 23, which Defendant would strongly oppose. Even if such a class was certified, Plaintiffs would have to establish that the class and collective actions should remain certified for trial. "Litigation inherently involves risks." *Massiah*, 2012 WL 5874655 at *4. The settlement alleviates this uncertainty. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

27. The risk of maintaining the class status through trial is also present. The Court has not yet certified the Rule 23 state law class, and the parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing by both parties. In

arguing against class certification, Defendant would likely argue that the number and variety of individualized questions, the different job duties and compensation of tipped and non-tipped employees, the number of hours worked, the various payment structures which applied, and other similar questions preclude class certification. If Plaintiffs ultimately prevailed in obtaining Rule 23 class certification, Defendant would likely move to de-certify the collective action and seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). Settlement eliminates the risk, expense, and delay inherent in this process. *Massiah*, 2012 WL 5874655, at *5.

28. Defendant's ability to withstand a greater judgment is not currently at issue. Even if the Defendant can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178, n.9). This factor does not hinder granting final approval.

29. The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.' *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005) citing *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,"' settlement is reasonable under this factor."

*Massiah*, 2012 WL 5874655 at *5 (citations omitted). The eighth and ninth Grinnell factors favor final approval.

### VII. Approval of the FLSA Settlement

30. The Court hereby approves the FLSA settlement.

31. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

32. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1353–54 (11th Cir.1982). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7.

33. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

### VIII. Dissemination of Notice

34. Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). (Devery Decl. ¶¶ 6, 7.) The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted July 16,

2015. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

### IX. Award of Fees and Costs to Class Counsel and Award of Service Award to Named Plaintiffs

35. Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Named Plaintiffs' and the Class Members' claims.

36. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

37. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests.

38. The Court hereby awards Class Counsel attorneys' fees of $65,000.00 (33.33% of the Gross Settlement Fund).

39. The Court hereby awards Class Counsel reimbursement of litigation expenses in the amount of $4,199.15.

40. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir.2005); *Sewell v. Bovis Lend Lease, Inc.,* No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (following percentage-of-the-fund method); *Willix,* 2011 WL 754862, at *6 (same); *Diaz,* 2010 WL 5507912, at *7–8; *Clark,* 2010 WL 1948198 at *8–9 (same); *Reyes v. Buddha–Bar NYC,* No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*

258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

41. In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Toure v. Amerigroup Corp.*, 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012); *Sewell*, 2012 WL 1320124 at *13; *Willix*, 2011 WL 754862 at *6. Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL. *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *see also Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL."); *Deposit,* 445 U.S. at 338–39.

42. Class Counsel's request for one-third (33.33%) of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., Willix*, 2011 WL 754862, at *6-7 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Toure*, 2012 WL 3240461, at *5 (awarding one-third of $4,450,000 in

wage and hour misclassification case). Courts in this Circuit have routinely granted requests for one-third or more of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Clark*, 2010 WL 1948198 at *8–9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait*, 2010 WL 2025106 at *8–9 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 0287, 2009 WL 5841129, at *4–5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit); *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA*, No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement). A fee of 23% of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862 at *7 (internal quotation marks omitted).

43.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of thirty-three and one—third percent (33.33%) is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a thirty percent (30%) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Toure*, 2012 WL 3240461 at *6; *Willix*, 2011 WL 754862 at *7; *Diaz*, 2010 WL 5507912 at *7; *Clark*, 2010 WL 1948198 at *9.

44. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third (33.33%) of the fund.

45. The Court also awards Class Counsel reimbursement of litigation expenses in the amount of $4,199.15.

46. The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement fund.

47. The Court finds reasonable service award to the Named Plaintiff in the amount of $3,900.00. These amounts shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Toure*, 2012 WL 3240461 at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell*, 2012 WL 1320124 at *14–15 (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes*, 2011 WL 4599822 at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix*, 2011 WL 754862 at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres*, 2010 WL 5507892 at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait*, 2010 WL 2025106 at *9 (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the

prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

**X.   Conclusion and Dismissal**

48.   The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

49.   The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all FLSA Collective Action Members, and all Rule 23 Class Members who have not opted out of the applicable classes.

50.   The Court approves the release of the released claims, which shall be binding on the Class Members who have not opted out of the class.

51.   Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendant or others have engaged in any wrongdoing.

52.   Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

53.     This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED this \_\_16th\_\_ day of \_\_July\_\_, 2015.

_____
Honorable Edgardo Ramos
United States District Judge